UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **BeatStars, Inc.,** § | |
| *Plaintiff* § | |
| § | |
| v. § | |
| § | Case No. 1:21-CV-905-LY |
| § | |
| **Space Ape Limited and** § | |
| **John Doe Entity,** § | |
| *Defendants* § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
   UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff BeatStars, Inc.'s Motion for Preliminary Injunction, filed July 1, 2022 (Dkt. 34); Defendant Space Ape Limited's Oposition to Plaintiff's Motion for Preliminary Injunction, filed July 22, 2022 (Dkt. 41); and Plaintiff's Reply, filed July 28, 2022 (Dkt. 42). On July 7, 2022, the District Court referred Plaintiff's Motion and related filings to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 36.

### I.   Background

BeatStars, Inc. filed this trademark infringement action against Space Ape Limited and John Doe Entity on October 7, 2021. Dkt. 1. In its Amended Complaint, filed July 19, 2022, BeatStars alleges that it is "a music streaming and beat licensing platform designed for recording artists and songwriters to discover and acquire production music for recording and lyric composition." Dkt. 39 ¶ 6. Recording artists purchase and download studio music files from the BeatStars platform. *Id.* BeatStars also offers downloadable computer application software. *Id.* ¶ 7. BeatStars owns a federal registration on the Principal Register for the composite mark:

1



issued July 13, 2021 for "downloadable computer application software for the storage and licensing of digital media downloaded from a global computer network or mobile phone, all in the field of music," in International Class 9 (Reg. No. 6414144),[1] as well as three pending applications to register BEATSTARS for music-related services. Dkt. 39 ¶ 8.

Space Ape is a mobile gaming company. *Id.* ¶ 9. BeatStars alleges that "in or about August 2021 Defendant first began providing in the United States a downloadable computer software application with the name 'Beatstar' for a music beat game, including through the Apple App Store and Google Play App Store." *Id.* ¶ 10. BeatStars alleges that Space Ape's game "allows the user to select and interact with particular songs by tapping, swiping, and touching the notes of a song on a mobile application screen to receive a score." *Id.* ¶ 11. Space Ape owns a federal trademark registration on the Principal Register for the mark **BEATSTAR** (in standard characters), issued November 5, 2019 for goods and services that include "computer application software for mobile phones, namely, software for enabling users to play games" in International Class 9 (Reg. No. 5900220). *See* Dkt. 39 ¶ 18.

Asserting priority and likelihood of confusion, BeatStars brings claims against Space Ape for trademark infringement, false designation of origin, and unfair competition under Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, as well as for trademark infringement and unfair competition under Texas common law. Relief BeatStars seeks includes, *inter alia*,

---

[1] Pursuant to Fed. R. Evid. 201(b)(2), the Court takes judicial notice of trademark application and registration records on the U.S. Patent and Trademark Office website, uspto.gov. *See Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of agency's website); *Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 871 (S.D. Tex. 2020) ("[G]overnmental websites are proper sources for judicial notice.").

cancellation of Space Ape's trademark registration, a permanent injunction, recall, corrective advertising, a disclaimer, actual and punitive damages, and attorneys' fees and costs.

In its Answer to the Amended Complaint, Space Ape alleges that the parties were negotiating a coexistence agreement from July 2020 until November 2020, "when Plaintiff suddenly stopped responding to communication from Space Ape," and that BeatStars argued to the U.S. Patent and Trademark Office ("PTO") during prosecution of its registration that there was no likelihood of confusion between the parties' marks. Dkt. 43 at 6-7. Affirmative defenses Space Ape asserts include, *inter alia*, res judicata, laches, estoppel or acquiescence, collateral estoppel, judicial estoppel, waiver, and unclean hands. *Id.* at 7.

BeatStars now seeks a preliminary injunction prohibiting Space Ape from using the BEATSTAR mark. Dkt. 34. Space Ape opposes the Motion, contending that the Court should deny preliminary relief "based solely on Plaintiff's significant delay in bringing this motion – over two years from when Plaintiff first contacted Space Ape about its BEATSTAR game and nearly nine months after filing its complaint." Dkt. 41 at 1. As explained below, the undersigned Magistrate Judge agrees with Space Ape and recommends that the District Court deny BeatStars' Motion.

## II.  Legal Standard

A preliminary injunction is an "extraordinary and drastic remedy" and "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008); *see also Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997) ("The grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance."). "The decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). A preliminary injunction is warranted only if the movant establishes four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued;

Case 1:21-cv-00905-LY   Document 45   Filed 08/09/22   Page 4 of 9

(3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction will not disserve the public interest. *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 463-64 (5th Cir. 2021). The significance of the second factor in particular is well-recognized:

> Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered. Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief.

11A Mary Kay Kane, Federal Practice and Procedure ("Wright & Miller") § 2948.1 (3d ed. April 2022 Update).

Because a preliminary injunction is an extraordinary form of equitable relief, the movant must clearly carry the burden of persuasion on all four requirements. *Planned Parenthood Ass'n of Hidalgo Cnty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012). Failure to prove any one of the elements will result in denial of the preliminary injunction. *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020). Even when the movant carries its burden of persuasion on all four elements, the decision to grant or deny relief is left to the sound discretion of the district court. *Miss. Power & Light*, 760 F.2d at 621.

Neither party requested a hearing, and a hearing is not required for the Court to rule on this Motion. A district court may rule on a motion for preliminary injunction without an oral hearing if (1) there is no factual dispute, (2) the parties have "ample opportunity to present their respective views of the legal issues involved" through briefing, and (3) the parties received sufficient notice. *See ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 683 (N.D. Tex. 2015) (quoting *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996)); *Anderson v. Jackson*, 556 F.3d 351, 361 (5th Cir. 2009); *PCI Transp., Inc. v. Fort Worth W. R.R. Co.*, 418 F.3d 535, 546 (5th Cir. 2005).

### III.     Analysis

On the facts presented, the Court finds that the second preliminary injunction factor, substantial threat of irreparable injury, is dispositive of BeatStars' Motion. BeatStars correctly argues that, after amendment by the Trademark Modernization Act of 2020, Section 34 of the Lanham Act incorporates a rebuttable presumption of irreparable harm:

> A plaintiff seeking an[ ] injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.

15 U.S.C. § 1116(a). But, as the leading trademark commentator cautions:

> The statutory presumption does not mean that a trademark owner is automatically entitled to a preliminary injunction. A preliminary injunction is a traditional equitable remedy. Therefore, even if the trademark owner demonstrates a likelihood of success in proving a likelihood of confusion, there may be other equities that weigh in favor of a denial of a preliminary injunction. ***For example, delay in moving for a preliminary injunction is often cited as a reason for denying a preliminary injunction***.

5 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION ("MCCARTHY") § 30:47 (5th ed. June 2022 Update) (emphasis added) (footnotes omitted). Professor McCarthy explains: "'Irreparable' injury connotes ongoing serious harm that calls for prompt action by the moving party before it can ask the court for an immediate injunction pending trial. Delay in seeking a preliminary injunction tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial." *Id.* § 30:48.50 (internal quotation marks and footnotes omitted); *accord* 11A WRIGHT & MILLER § 2948.1 ("A long delay by plaintiff after learning of the threatened harm [ ] may be taken as an indication that the harm would not be serious enough to justify a preliminary injunction.").

Assuming without deciding that BeatStars could establish a likelihood of success on the merits, its own actions rebut the presumption of irreparable harm and militate against any need for immediate relief through the "extraordinary and drastic remedy" of a preliminary injunction. *Munaf*, 553 U.S. at 689. This conclusion is based on the following undisputed timeline:

- November 5, 2019: Space Ape's BEATSTAR Registration No. 5900220 issues for goods and services including electronic games services "to be used in relation to musical interactive entertainment." Dkt. 41-2 at 6.

- April 22, 2020: The PTO issues a preliminary refusal to register BeatStars' composite mark BEATSTARS due to a likelihood of confusion with the mark BEATSTAR in Space Ape's registration. *See* Response to Office Action, Dkt. 41-3.

- July 20, 2020: BeatStars contacts Space Ape concerning a coexistence agreement. Declaration of Joel Leviton, Dkt. 41-1 ¶ 4; Dkt. 41-4 at 7.

- November 2020: Negotiations end after the PTO withdraws the refusal and Space Ape receives no response to a revised draft coexistence agreement. Dkt. 41-1 ¶¶ 7-8; Dkt. 41-3 at 6; Dkt. 41-4 at 2.

- August 2021: Space Ape launches its app under the BEATSTAR mark. Declaration of Simon Hade, Dkt. 41-5 ¶ 33.

- October 2021: BeatStars contends that confuses arises and files this lawsuit. Dkt. 1; Declaration of Brian Stewart, Dkt. 34-44 ¶ 19.

- November 2021: BeatStars' lead counsel dies unexpectedly. Dkt. 42 at 3; Dkt. 42-2 at 2.

- December 8, 2021: The parties file an agreed motion to abate proceedings for 90 days for settlement discussions; the Court grants the motion. Dkt. 14; Dkt. 15.

- March 18, 2022: The parties file a second agreed motion to abate proceedings for 46 days for further settlement discussions; the Court grants the motion. Dkt. 16; Dkt. 17.

- May 24, 2022: Proceedings resume.

- June 2, 2022: The parties cease conferring. Dkt. 34 at 1; Dkt. 42 at 3.

- July 1, 2022: BeatStars files its Motion for preliminary injunction. Dkt. 34.

It is undisputed that BeatStars and Space Ape began negotiating a coexistence agreement in July 2020, two full years before BeatStars moved this Court for emergency interim injunctive relief. Yet BeatStars did not seek a preliminary injunction until nine months after it filed suit and nearly a year after Space Ape began using the BEATSTAR mark in association with its app in the United States. This delay is not unexplained; unfortunately, BeatStars' attorney died, and the parties have been attempting to reach a resolution of their dispute. This explanation, however, is insufficient. BeatStars' strategic decision not to ask the Court to enjoin Space Ape's use of the BEATSTAR mark promptly after confusion allegedly arose negates its argument that the Court must act on an emergency basis to protect it from irreparable injury pending trial on the merits. By its own actions in spending four months attempting to negotiate a coexistence agreement with Space Ape in 2020, pausing negotiations for nearly a year, then devoting eight more months to settlement talks after this case was filed and after confusion allegedly arose – from October 2021, which BeatStars calls "the earliest starting point for any delay analysis,"[2] through May 2022 – BeatStars has demonstrated no apparent urgency and shown instead that any injunctive relief from the Court should await resolution of its claims on the merits. *Cf.* 5 MCCARTHY § 31:31:

> Plaintiff's delay that would not be sufficient to be a defense to an ultimate, permanent injunction, may well suffice to support a trial judge's conclusion that, after all, there is not a very pressing need for immediate extraordinary relief and that the plaintiff, having itself delayed, can well afford to wait until a full-scale trial can be held.

Courts in this District have denied preliminary injunctions due to delays shorter than the nine months (at least) here. *See, e.g.*, *Crossover Mkt. LLC v. Newell*, No. A-21-CV-00640-JRN, 2022 WL 1797359 (W.D. Tex. Jan. 12, 2022) (denying preliminary injunction motion filed nearly five months after complaint and nine months after plaintiff learned of allegedly improper disclosure); *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-cv-444-RP, 2017 WL 5588190, at

---

[2] Dkt. 42 at 2.

\*3 (W.D. Tex. Nov. 20, 2017) ("Plaintiffs' delay in seeking injunctive relief is fatal to their request for a preliminary injunction."); *see also Myo, LLC v. Brull & York, LLC*, 1:18-CV-370-RP, 2019 WL 136820, at \*8 n.8 (W.D. Tex. Jan. 8, 2019) (stating that six-month delay in seeking injunctive relief after filing complaint "dramatically undermines a claim that Plaintiff is at risk of irreparable harm absent injunctive relief"); *All Access Today, L.P. v. Aderra Inc.*, No. A-08-CA-498 LY, 2009 WL 10669445, at \*4-5 (W.D. Tex. July 7, 2009) (denying preliminary injunction based on delay of twelve to eighteen months; collecting cases); *GoNannies, Inc. v. GoAuPair.com, Inc.*, 464 F. Supp. 2d 603, 608-09 (N.D. Tex. 2006) (finding that plaintiffs' delay in moving for preliminary injunction six months after discovering allegedly infringing use and five months after filing suit rebutted presumption of irreparable harm). Indeed, "[d]istrict courts in this circuit have generally declined to grant injunctive relief where a plaintiff, without sufficient explanation, delayed for five months or more in seeking injunctive relief." *Villareal v. Saenz*, No. 5-20-CV-00571-OLD-RBF, 2021 WL 1940620, at \*4 (W.D. Tex. May 14, 2021) (quoting *Ronaldo Designer Jewelry, Inc. v. Cox*, No. 1:17-CV-2-DMB-DAS, 2017 WL 3879095, at \*10 (N.D. Miss. Sept. 5, 2017)), *R. & R. adopted*, 2021 WL 4057570 (Aug. 4, 2021).

The Court concludes that, at this stage of the proceeding, BeatStars' lengthy delay in seeking preliminary injunctive relief precludes a finding of a substantial threat of irreparable injury in the absence of a preliminary injunction. Because BeatStars has not satisfied the second element for a preliminary injunction, its Motion cannot prevail. *See Future Proof Brands*, 982 F.3d at 289. The undersigned Magistrate Judge therefore recommends that the District Court in its discretion deny BeatStars' request for the extraordinary remedy of a preliminary injunction. *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018).

### IV.     Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Plaintiff BeatStars, Inc.'s Motion for Preliminary Injunction (Dkt. 34).

It is **FURTHER ORDERED** that this case be **REMOVED** from the undersigned Magistrate Judge's docket and **RETURNED** to the docket of the Honorable Lee Yeakel.

### V.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on August 9, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE